T.C. Memo. 2015-107

UNITED STATES TAX COURT

QUALITY SOFTWARE SYSTEMS INC., Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14008-11L.                    Filed June 11, 2015.

P petitioned for review of a determination by the Internal
Revenue Service Appeals Office upholding R's filing of a notice of
Federal tax lien (NFTL) and rejecting P's proposed collection
alternative.  P's alternative would have reinstated an offer-in-
compromise agreement that was terminated on account of P's breach
of the condition requiring P, for five years, to file all returns timely
and to pay all taxes timely.

<u>Held</u>:  P breached the agreement, and R was within his rights to
terminate it, to reinstate unpaid tax, and to move to collect the unpaid
tax by filing the NFTL.

<u>Held</u>, <u>further</u>, remanded to Appeals Office to explain its basis
for rejecting P's collection alternative.

[*2]   Henry F. Furst, for petitioner.

Marco Franco, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  This case is before the Court to review a determination (determination) made by the Internal Revenue Service (IRS) Appeals Office (Appeals) that (1) respondent had properly and appropriately filed a notice of Federal tax lien (NFTL) to collect petitioner's unpaid employment tax liability and (2) Appeals would not, as a collection alternative, reinstate an agreement (agreement) accepting petitioner's offer-in-compromise (OIC).  The terms of the agreement were that respondent would accept a partial payment of petitioner's employment tax liability if, among other things, petitioner complied for five years with all provisions of the Internal Revenue Code (Code) relating to filing its returns and paying its required taxes.  Respondent had terminated the agreement and reinstated the unpaid tax liability on account of petitioner's breach of that condition.  Petitioner assigns error to the determination on the grounds that Appeals abused its discretion in refusing to reinstate the agreement and not withdrawing the NFTL.

**[*3]**   Unless otherwise indicated, all section references are to the Code of 1986, as amended.  All dollar amounts have been rounded to the nearest dollar.  We review the determination pursuant to sections 6320(c) and 6330(d)(1).

## FINDINGS OF FACT

The parties have stipulated certain facts and the authenticity of certain documents.  The facts stipulated are so found, and the documents stipulated are accepted as authentic.  When petitioner filed the petition, its principal place of business was in New Jersey.

OIC and Agreement

On February 23, 2005, respondent accepted petitioner's offer to pay $360,000 in compromise of its substantially greater unpaid employment tax liability for certain taxable periods that ended in 2000 and 2002.  Petitioner had made the OIC on the basis of doubt as to collectibility; i.e., that it did not have sufficient assets and income to pay the full amount it owed.  The agreement resulting from respondent's acceptance of the OIC provides, among other things, that petitioner will comply with all provisions of the Code relating to filing its returns and paying its required taxes for five tax years from the date of the agreement.  In the event of petitioner's default, the agreement provides that

**[\*4]** respondent can reinstate the unpaid amount of tax and collect it along with interest.

Petitioner's Compliance History

Respondent maintains an organization, the Centralized OIC Unit (COIC Unit), to monitor compliance with accepted OICs.  As an employer, petitioner was obligated to file quarterly employment tax returns on Form 941, Employer's Quarterly Federal Tax Return, and to make periodic deposits of employment taxes. From July 2006 through March 2009, petitioner breached the agreement on several occasions by not timely filing Form 941 or by not timely making its required tax deposits.  Respondent's records indicate that, on four occasions, in response to petitioner's breach of the agreement, the COIC Unit sent to petitioner what respondent characterizes as a "potential default letter" and that, on August 12, 2009, the unit sent to petitioner what respondent characterizes as a "default letter".[1]  On September 3, 2009, respondent terminated the agreement.

_____

[1]The term "default" is defined in relevant part as:  "The omission or failure to perform a legal or contractual duty".  Black's Law Dictionary 480 (9th ed. 2009).  With respect to OICs, the IRS uses the term in two different ways:  (1) as modified by the adjective "potential", to signify that a taxpayer is not in compliance with his obligations under an accepted OIC but that the IRS is not ready to terminate the agreement, see, e.g., Internal Revenue Manual (IRM) pt. 5.8.9.3(1)(b) (Jan. 1, 2015), and (2) to signify the termination of the agreement, see, e.g., id. pt. 5.8.9-4 (Sept. 23, 2008) (Default Letter).  We will use the term

(continued...)

**[*5]** The following table summarizes that activity.

| Date | Activity |
|---|---|
| 7/31/2006 | Petitioner does not timely file Form 941 for quarter ended 6/30/2006. |
| 10/25/2006 | COIC sends potential default letter referencing failure to file return. |
| 12/15/2006 | Petitioner files return. |
| 9/30/2007 | Balance due on account of $265 penalty for late deposits. |
| 12/20/2007 | COIC sends potential default letter referencing failure to pay penalty. |
| 12/27/2007 | Petitioner makes payment. |
| 1/30/2009 | Petitioner does not timely file Form 941 for quarter ended 12/31/2008. |
| 3/31/2009 | COIC sends potential default letter referencing failure to file return. |
| 4/9/2009 | Petitioner files return. |
| 4/30/2009 | Petitioner does not timely file Form 941 for quarter ended 3/31/2009. |
| 6/25/2009 | Respondent claims the COIC Unit sent potential default letter referencing failure to file return. Petitioner claims it did not receive the letter. |
| 7/19/2010 | Petitioner files return. |
| 8/12/2009 | Respondent claims the COIC Unit sent default letter, stating that petitioner had failed to file a Form 941 for the quarter ended 3/31/2009 and had failed to pay a $344 penalty occasioned by a late employment tax deposits for the quarter ended 12/31/2008. Petitioner claims it did not receive the letter. |
| 9/3/2009 | Respondent terminates the agreement. |

---

[1](...continued)
"breach" to mean a failure to comply with the terms of an accepted OIC and the term "terminate" to refer to an IRS decision to take adverse action, such as to reinstate the original tax obligation, on account of a breach. See Trout v. Commissioner, 131 T.C. 239, 258 n.1 (2008) (Marvel, J., concurring).

[*6] <u>Reinstatement of Liability and the NFTL</u>

On September 28, 2009, on account of having terminated the agreement, respondent reinstated the unpaid amount of petitioner's employment tax liability for 2000, which resulted in a reinstated assessment of $138,745 of previously assessed tax and the assessment of $70,188 of statutory interest, for total assessments of $208,933. As of the petition filing date, respondent had not made a determination with respect to the amounts of petitioner's unpaid employment tax liabilities for the taxable periods ended in 2002, which were also covered under the agreement.

On May 27, 2010, respondent filed an NFTL and issued to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (notice), with respect to petitioner's unpaid employment tax liabilities for the quarters ended December 31, 2000 ($208,933), and December 31, 2008 ($344).

<u>Rectification</u>

Petitioner filed the missing Form 941 for the quarter ended March 31, 2009, on July 19, 2010, and paid the $344 penalty on August 26, 2010.

<u>Collection Due Process Hearing</u>

On June 4, 2010, in response to the notice, petitioner filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, referencing the

[*7] quarter ended December 31, 2000, and stating as the basis for the hearing request respondent's filing of the NFTL. In response to the question on the form asking why petitioner disagreed with the filing of the NFTL, petitioner referenced a letter it said was attached to the form. However, no letter accompanied the form that respondent received. Petitioner's request was ultimately assigned to Settlement Officer Jesse D. Voysest to conduct the hearing.

On November 8, 2010, Mr. Voysest held a face-to-face hearing with Michael G. Falk, petitioner's representative. The only issues they discussed were (1) whether the agreement should be reinstated and (2) whether petitioner received the notices of potential default. Mr. Falk argued that petitioner's breaches of the agreement causing respondent to terminate it (i.e., failing to file one quarterly return and to pay a $344 penalty) were de minimis and that it would be an abuse of Appeals' discretion not to reinstate it. On November 8, 2010, Mr. Voysest recorded the following in his case activity record.

> Held a face to face conference with the TP's [taxpayer's] POA [individual having the taxpayer's power of attorney].
>
> Essentially, although I agree that a reinstatement of the TP's offer is a viable resolution, technically, all proper procedures were followed in defaulting the offer.
>
> I agreed to run this past COIC to determine if there are any reinstatement options.

[*8] On November 12, 2010, after a discussion with someone in the COIC Unit,

Mr. Voysest recorded: "[S]ince the TP clearly defaulted there is no procedural

basis for reinstatement."

On March 29, 2011, he made an entry in the case activity record that

summarizes his thinking.

> Reviewed COIC case history which clearly indicates that the TP's
> OIC was properly defaulted as the proper notification (Potential
> Default Letter, Letter 2909C) was mailed to the TP on 12/18/07.
> However, there appears to be unresolved issues regarding whether or
> not the TP's POA was propoerly [sic] notified.
>
> The TP's offer was accepted on 11/29/04 [sic 2/23/2005]. The TP's
> offer was defaulted on 8/12/09 based on non-compliance with the five
> year rule. During the last year of compliance monitoring the TP
> incurred an FTD [Federal tax deposit] penalty (5/18/09) in the amount
> of $343.81 which was fully satisfied on 8/26/10. In addition, Form
> 941 for the 1st quarter of 2009 was not filed in a timely manner. The
> tax return was due by 4/15/09. The return was filed on 7/21/10. All
> FTD's were timely made and no penalties were incurred.
>
> At this point although the TP has technically defaulted I need to
> consider the hazards of litigation since the TP's CDP [collection due
> process] request was filed in a timely manner. My concern is whether
> or not the US Tax Court may find that an abuse of discretion has
> occurred by not reinstating the TP's offer since the actions which
> caused·the default were de-minimus [sic] and were rectified.
> Essentially, would it be fair to reinstate the TP's offer? In this
> instance I believe it would be.

Mr. Voysest sought further guidance from an Appeals analyst. On April 25,

2011, he recorded that he had received a response from the analyst, who advised

**[*9]** "that reinstatement of the TP's offer should be denied as there was a genuine default of the TP's offer." He then recorded his conclusion: "Therefore, [c]ompliance must be sustained." He later advised Mr. Falk of his decision to deny reinstatement of the agreement and that Appeals would issue a negative determination.

On May 12, 2011, by a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), Appeals Team Manager Darryl Lee provided petitioner with the following "Summary of Determination":

> Based on the available facts, the applicable laws and administrative procedures were followed and the filing of the Notice of Federal Tax Lien was proper and appropriate.
>
> Your request for the reinstatement of your offer in compromise has been denied. It was determined that you did not comply with the compliance terms and provisions of Form 656, Offer in Compromise.

Enclosed with the notice of determination was an attachment apparently written by Mr. Voysest, which describes the grounds for the determination. It begins with Mr. Voysest's recommendations, which repeat verbatim Mr. Lee's summary of the determination. It states that, by the hearing request, petitioner requested the reinstatement of the agreement as a collection alternative. It states that petitioner did not dispute its liability for the tax and raised no further issues.

**[*10]** Under the heading "<u>Balancing of need for efficient collection with taxpayer</u> <u>concern that the collection action be no more intrusive than necessary.</u>", it states the following.

> The lien action balanced the need for the efficient collection of taxes and is no more intrusive than necessary.

> Based on a review of the case activity records and case transcripts the lien action was necessary in order to protect the government's interest.

<u>Petition</u>

Petitioner timely filed the petition on June 13, 2011. Petitioner assigned as error that the IRS failed to properly exercise its discretion to permit an OIC to be reinstated. In support of its assignment of error, petitioner avers, among other things, that the IRS did not prove that petitioner received all appropriate notices concerning the default and that reinstatement of $289,933 of tax is a penalty disproportional to the harm to the IRS of one missed return and the late payment of a small tax penalty.[2] Respondent denied both petitioner's assignment and its described averments.

---

[2]It is not clear where the amount of $289,933 comes from. We are reviewing only the determination related to petitioner's unpaid 2000 Form 941 liability, assessments of which (including interest) the parties have stipulated total $208,933.

**[*11]**                                        OPINION

I.      Introduction

Section 6321 imposes a lien for unpaid Federal taxes.  Section 6323 provides that the lien imposed by section 6321 is not valid against certain persons until notice of the lien (the NFTL) is filed in accordance with rules provided. Section 6320(a) provides that, after the Commissioner has filed the NFTL, the Commissioner must notify the taxpayer of the fact of the filing and, among other things, his right to request a hearing.  If the taxpayer requests a hearing, the hearing is to be conducted by Appeals, and the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met.  Secs. 6320(b) and (c), 6330(c)(1).  The taxpayer requesting the hearing may raise "any relevant issue" relating to the unpaid tax or the Commissioner's collection action, including "challenges to the appropriateness of collection actions" and "offers of collection alternatives", including "an offer-in-compromise."  Sec. 6330(c)(2)(A)(ii) and (iii).

Following the hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the taxpayer at the hearing, and whether the collection action "balances the need for the efficient collection of taxes with the

**[\*12]** legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). Section 6330(d)(1) specifies that we have jurisdiction to review such determinations. Where the taxpayer's underlying tax liability is not at issue, which it is not here, we review such determinations for abuse of discretion. E.g., Isley v. Commissioner, 141 T.C. 349, 361 (2013). An abuse of discretion occurs if the Appeals officer exercises his discretion arbitrarily, capriciously, or without sound basis in fact or law. See id.

## II. Parties' Arguments

### A. Petitioner's Arguments

Petitioner argues that Mr. Voysest had discretion to reinstate the agreement and, by not doing so, he abused that discretion. It argues Mr. Voysest erred in determining that maintaining the NFTL balanced the need for efficient collection of taxes and petitioner's legitimate concern that any collection action be no more intrusive than necessary. It also argues that respondent's failure to send a notice of potential default supports reinstatement of the agreement. Finally, it argues that its late payment of a $344 penalty does not constitute grounds for terminating the agreement.

**[*13]** B.    Respondent's Arguments

Respondent argues that Appeals did not abuse its discretion by not reinstating the agreement.  He cites 13 Williston on Contracts, sec. 39:32 (4th ed. 2000), for the proposition that, "[o]nce a contract is breached, the injured party can choose to either continue the contract or terminate the contract."  He concedes, as he must, that generally, the injured party <u>can</u> bring a terminated contract back into effect:  "In the context of an OIC", he states, "this means that respondent has the legal right to * * * bring a terminated OIC back into effect after it [sic] previously decided to terminate it."  He adds:  "However, despite the fact that respondent has a legal right to reinstate a terminated OIC, respondent has no obligation or expectation to exercise this right."  "[T]he decision to reinstate an OIC that was terminated due to a taxpayer's breach", he continues, "rests solely within respondent's discretion."  He states:  "[B]oth respondent and its Appeals Office have consistently maintained a policy that they will <u>not</u> reinstate an OIC that was properly defaulted after a taxpayer breached its terms and conditions."  (Emphasis added.)  Particularizing his argument to the facts of this case, respondent states:

> The Appeals Office's decision declining to reinstate the OIC was not unexpected, as it was consistent with the Appeals Office's regularly practiced policy regarding terminated offers.  The Appeals Office did not deviate from its policy in any way, nor did Appeals

**[\*14]** treat the petitioner in this case differently than they would have treated any other similarly situated taxpayer.

Apparently using the adverb "fairly" to mean evenhandedly, respondent concludes his argument thus: "Petitioner does not allege that Appeals treated it unfairly. \* \* \* While petitioner may be unhappy with the final outcome of this case, there was no abuse of discretion."

He argues that Mr. Voysest properly balanced the need for efficient collection with petitioner's legitimate concern that collection be no more intrusive than necessary because, other than reinstating the agreement, petitioner offered no collection alternative.

He argues that petitioner's allegation that it did not receive all the notices is "immaterial", since the agreement specifically states that respondent could terminate the agreement upon breach without further notice of any kind. He argues that "[a]t most", the IRM states that the COIC unit should "make an attempt" to secure compliance by sending warning notices before terminating an OIC agreement but that the IRM does not require such notices to be sent, and, moreover, petitioner cannot rely on the IRM.

Finally, he argues that petitioner breached the agreement no fewer than five times, all of which could be grounds to terminate the agreement. Respondent

**[\*15]** terminated the agreement because of (1) petitioner's failure to file timely its Form 941 for the first quarter of 2009, and (2) petitioner's failure to make a timely Federal tax deposit for the fourth quarter of 2008, which resulted in the assessment of the $344 penalty. While respondent believes the latter failure also constitutes a breach of the agreement, respondent argues the former failure was clearly a breach sufficient to terminate the agreement on its own.

III.    Discussion

    A.    Introduction

Petitioner assigned as error only that Appeals failed properly to exercise its discretion in not permitting the agreement to be reinstated. It is, however, clear from its averments in support of the assignment and from its arguments on brief that it also challenges the appropriateness of respondent's NFTL filing and Mr. Voysest's determination to maintain the NFTL.[3] We will deal first with petitioner's challenge to the appropriateness of the NFTL filing. We will then consider Mr. Voysest's exercise of discretion. For the reasons stated infra, we

---

[3]Generally, we will refer to Appeals as the actor making the determination. When we wish to discuss Mr. Voysest's personal involvement, we will refer to him by name. It is clear to us that the determination embodied his considerations and recommendations.

[*16] need not now deal with petitioner's challenge of Appeals' determination to maintain the NFTL.

    B.    <u>Appropriateness of Respondent's Filing the NFTL</u>

On September 3, 2009, respondent terminated the agreement, and, on September 28, 2009, he reinstated petitioner's unpaid 2000 employment tax liability. He reinstated the previous assessment of tax and assessed interest, for total assessments of $208,933. By May 27, 2010, petitioner had not paid that sum, nor had it paid $344 owed for the last quarter of 2008, and, on that date, respondent took action to collect both amounts by filing an NFTL. Petitioner challenges the appropriateness of respondent's filing the NFTL, at least to the extent of the $208,933, on the grounds that respondent had unlawfully terminated the agreement. Had he not terminated the agreement, petitioner argues, there would have been no actionable assessments totaling $208,933, and, without those actionable assessments, no lien notice for $208,933 would have been filed. Therefore, it concludes, the NFTL, at least to the extent of $208,933, was an inappropriate collection action.

The parties have stipulated, and we have found, that respondent terminated the agreement as a result of petitioner's failures (1) to file the Form 941 for the quarter ended March 31, 2009, and (2) to pay a $344 penalty for a late employment

[*17] tax deposit for the quarter ended December 31, 2008. The agreement specifically provides that, for five years following the date of the agreement, February 23, 2005, petitioner would comply with all provisions of the Code relating to filing its returns and paying its required taxes. The agreement further provides that, upon petitioner's breach of its terms, respondent could reinstate the unpaid amount of tax and collect it. In Trout v. Commissioner, 131 T.C. 239, 254 (2008), we held that the timely-filing-and-paying requirements of an OIC similar to the one here in question were express conditions of the resulting agreement with the IRS, requiring strict compliance to avoid breach and termination of the agreement. Petitioner cannot argue that it did not breach the agreement by failing timely to file the Form 941 for the quarter ended March 31, 2009. It argues that its failure to pay the $344 penalty did not breach the agreement because the agreement required it only to pay all required taxes and did not also require it to pay all required penalties. Respondent points out that the $344 penalty was assessed only because petitioner did not timely make a Federal tax deposit, which it was required to do under the applicable provisions of the Code relating to paying its taxes. See sec. 6656(a) (providing that the penalty for failure to make Federal tax deposits is applied against taxpayers who fail to make a deposit of tax as required under the Code or by regulations of the Secretary). Petitioner breached the agreement both

**[\*18]** by failing timely to file a required return and by failing timely to make a Federal tax deposit. Respondent was within his rights under the agreement to terminate the agreement and to reinstate the unpaid tax, along with assessing interest. Respondent was also within his rights to act to protect the Government's interest by filing an NFTL. See sec. 6323(a). We see no error in respondent's action in that regard.

C. Mr. Voysest's Exercise of Discretion

The parties have joined issue as to whether Appeals failed properly to exercise its discretion by not permitting the agreement to be reinstated. The notice of determination states only: "Your request for reinstatement of your offer in compromise has been denied. It was determined that you did not comply with the compliance terms and provisions of Form 656, Offer in Compromise." The Voysest attachment to the notice offers no further explanation. Mr. Voysest's case activity record, part of the administrative file, indicates his sympathy for reinstating the agreement. On November 8, 2010, he recorded: "I agree that a reinstatement of the TP's offer is a viable resolution". Shortly thereafter, on the basis of a discussion with someone in the COIC Unit, he recorded his conclusion that, because the agreement had been terminated, there was no procedural basis for reinstatement. On March 29, 2011, he considered the grounds on which the

[*19] agreement had been terminated: It had been terminated during the last year of petitioner's five-year compliance term because petitioner had been assessed a Federal tax deposit penalty of $344, which it had paid, and it had not timely filed Form 941, for one quarter, which it had subsequently filed. He recorded his concerns that those breaches of the agreement were de minimis and had been rectified. He worried that, for those reasons, the Tax Court would find that Appeals had abused its discretion in not reinstating the agreement. He concluded his March 29 entry with a rhetorical question (which he answered): "Essentially, would it be fair to reinstate the TP's offer? In this instance I believe it would be." On further consultation with an Appeals colleague, he concluded that reinstating the agreement was not an option since the agreement had properly been terminated. The determination followed.

A taxpayer may, in a section 6330 hearing, raise a collection alternative, and collection alternatives include offers-in-compromise. Sec. 6330(c)(2)(A)(iii). On brief, respondent concedes that Appeals faced no legal impediment to reinstating the agreement; to do so, he states, "rests solely within respondent's discretion". As a matter of policy, however, respondent argues, neither he nor Appeals will reinstate an OIC agreement that was terminated because of a taxpayer's breach of the agreement's terms and conditions. We thus conclude that, practically speaking,

[*20] Mr. Voysest had no discretion to reinstate the agreement. Notwithstanding his apparent conclusion that the equities weighed in favor of reinstatement, he determined that the only recommendation that he could make was that Appeals reject petitioner's collection alternative of reinstating the agreement.

While there may be good reason for Appeals' blanket rejection of the reinstatement of OIC agreements in cases of breach, we cannot tell that from the record or from respondent's argument. It is not even clear such a policy exists despite Mr. Voysest's determination and respondent's contentions on brief. Cf. Trout v. Commissioner, 131 T.C. at 255 ("The Appeals officer understood * * * that he had the discretion to excuse the breach of the express condition and reinstate the OIC. He chose not to.").

If such a policy does exist, it is not readily apparent what reasons or principles justify the lack of an exception to reinstatement in all circumstances of breach, especially given the individualized analysis afforded the initial termination decisions of breached OIC agreements. See, e.g., IRM pt. 5.8.9.3 (Jan. 1, 2015) (procedures for handling breached but not yet terminated OIC agreements, referred to as "Potential Default Cases"); supra pp. 4-5 (petitioner breached several times yet respondent did not terminate the agreement). And if there are no reasons or principles justifying the policy, we point out that one definition of "arbitrary" is,

**[*21]** "determined by chance, whim, or impulse, and not by necessity, reason, or principle".  The American Heritage Dictionary of the English Language 91 (5th ed. 2011).  By having discretion to reinstate OIC agreements, but choosing never to exercise that discretion, without providing any sort of justification, Appeals may be abusing its discretion.  In this instance, Appeals has excused itself from stating facts and reasons that respond to the evidence and arguments of petitioner and has deprived us of the opportunity for thoughtful judicial review.  Cf. Estate of Roski v. Commissioner, 128 T.C. 113, 128-131 (2007) ("By adopting a bright-line rule in every case, the Commissioner has shirked his administrative duty to state findings of fact and reasons to support his decisions that are sufficient to reflect a considered response to the evidence and contentions of the losing party and to allow for thoughtful judicial review."); see also Harborlite Corp. v. Interstate Commerce Comm'n, 613 F.2d 1088, 1092 (D.C. Cir. 1979) (on which we relied in Estate of Roski).

        Appeals retains jurisdiction over this case, see sec. 6330(d)(2), and we will remand it so that, if Appeals, on further consideration, determines not to reinstate the agreement, it can include in its determination a full explanation of its reasons, whether those reasons are particular to the facts of this case or whether those reasons amount to a policy not to reinstate OIC agreements that have been

**[\*22]** terminated without regard to the facts of a particular case. Our remand will also give the parties the opportunity to consider whether Mr. Voysest's communications with the COIC Unit constituted prohibited ex parte communications between Appeals and other IRS employees. See Rev. Proc. 2000-43, sec. 3, Q&A-6, 2000-2 C.B. 404, 406, amplified, modified, and superseded by Rev. Proc. 2012-18, sec. 2.03(10)(a), 2012-10 I.R.B. 455, 460.

D. Remaining Issues

We need not address any unaddressed issues until this case returns to us following remand.

IV. Conclusion

To reflect the foregoing,

An appropriate order will be issued.